**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC. PENSION FUND,**<br><br>   **Plaintiff,**<br><br>   **v.**<br><br>**JAMES CONSTRUCTION, CO., INC.,**<br><br>   **Defendant.** | Civ. No. 2:13-1695<br>(KM)(MAH)<br><br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion of the defendant, James Construction Co., to dismiss the complaint (Docket No. 12), and the cross-motion of the plaintiff, Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund to strike the motion to dismiss (Docket No. 13). For the reasons set forth below, both motions are **DENIED**.

## I.   BACKGROUND

Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund (hereinafter, "Trucking," or "the sponsor plan") brought this action against James Construction Co. ("James") pursuant to the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1399(c)(5), for failure to remit withdrawal liability payments required by a collective bargaining agreement. Compl. (Docket No. 1) ¶¶ 7-15.

Trucking is a multi-employer pension plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2). The fund is governed by a Board of Trustees made up of union and employer representatives. The fund is administered pursuant to a trust agreement, the provisions of ERISA, and regulations promulgated under ERISA. Compl. ¶ 3. Trucking is located in Union City, New Jersey. *Id.* Defendant James is a New Jersey corporation with its principal place of business in Oakland, New Jersey. *Id.* ¶ 4.

1

Over the course of several years, James entered into multiple collective bargaining agreements with Local 560, International Brotherhood of Teamsters. *Id.* ¶ 5. The agreements required James to remit pension contributions to Trucking on a monthly basis on behalf of all employees performing bargaining unit work at its construction sites and at its Oakland, New Jersey facility. *Id.* ¶ 6.

By about December 1, 2010, James no longer employed anyone covered by the collective bargaining agreements. *Id.* ¶ 7. Accordingly, on or about December 1, 2010, Trucking determined that James had completely withdrawn from the fund as described in Section 4203(a) of the MPPAA, 29 U.S.C. § 1383(a). *Id.* ¶ 8. Trucking then calculated James's share of Trucking's unfunded vested liability in accordance with Sections 4202 and 4211 of the MPPAA, 29 U.S.C. §§ 1382 and 1391. *Id.* ¶ 9. Trucking notified James of that calculation in a letter dated March 14, 2012. *Id.* ¶ 10. The letter stated that James's total withdrawal liability amount was $285,376.00. The letter also set forth a payment schedule of $3,005.37 per month for 134 months starting on May 1, 2012, plus a final payment of $1,700.01. *Id.* The letter notified James of its right to request a review of the withdrawal liability assessment and the right to arbitrate the liability determination or the amount. *Id.* As discussed further below, James responded by filing a demand for arbitration with the New Jersey State Board of Mediation on April 5, 2012. Def. Ex. 3 (Docket No. 12-2).

Trucking alleges that James failed to remit its first withdrawal liability payment due on May 1, 2012, and failed to make payments thereafter. Compl. ¶ 11.[1] In a letter dated May 23, 2012, Trucking advised James that if no payments were received within 60 days, James would be in default and the entire amount of its withdrawal liability would come due. *Id.* ¶ 12. James did not submit any payments. Trucking alleges it James is in default and owes the full amount of withdrawal liability. *Id.* ¶¶ 13-15.

Trucking further alleges that under Section 4219(b)(2) of MPPAA, James's monthly withdrawal liability payments would not be suspended by a request for review or an appeal. *Id.* ¶ 10. James did file an arbitration request, but Trucking alleges that James did not adequately specify its objections and at any rate did not proceed with the arbitration. James subsequently defaulted on the required instalment payments and Trucking alleges that this failure "waived or forfeited [James's] opportunity to proceed to arbitration." *Id.*

---

[1]     At the time the Complaint was filed, James had not remitted any payments. However, under a stipulated agreement discussed below, James has paid up the overdue instalments and has been making regular monthly payments.

Trucking filed this Complaint on March 19, 2013. (Docket No. 1). Trucking seeks judgment against James for the full sum of withdrawal liability with interest, liquidated damages, and attorney's fees and costs. *Id.*

On May 21, 2013, James and Trucking entered into a stipulated agreement under which James has paid Trucking all past due monthly withdrawal payments, and it continues to make current monthly payments as they fall due. Stipulation (Docket No. 11); Def. Br. (Docket No. 12-3) at 3. The parties have agreed that payments will continue until the Court enters final judgment on the merits of this action. Stipulation at 2.

On June 7, 2013, James moved to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). James argues that under the MPPAA, until the parties have exhausted arbitration, the Court is not empowered to hear the merits of claims arising from its withdrawal liability. Def. Br. at 1. Trucking has cross-moved to strike the motion to dismiss. (Docket No. 13-1). That "cross-motion" is in substance an opposition brief, and I treat it as such.

## II.   ANALYSIS

James argues that arbitration is required under the MPPAA to resolve factual and legal disputes as to withdrawal liability under multiemployer plans, and that this Court therefore lacks subject matter jurisdiction to adjudicate the dispute prior to arbitration. Def. Br. at 3. Trucking does not disagree with that as a statement of the law. Trucking contends, however, that James forfeited its right to arbitration by failing to satisfy the pre-conditions set forth in the MPPAA. Pl. Opp. (Docket No. 13-1) at 7.

Trucking's Complaint alleges that James "did file an arbitration submission," that its submission failed to specify the nature of its objections, that James did not proceed with the arbitration, and that it defaulted on its obligations. Compl. ¶ 10. In its opposition brief, Trucking adds that James forfeited any right to arbitration by failing to comply with the MPPAA's procedural requirements and failing to make interim payments. *See* Opp. Br. at 3-7. James argues that it "promptly requested" arbitration when Trucking asserted a claim of withdrawal liability in March 2012, and only suspended its arbitration efforts in order to pursue settlement negotiations. Def. Br. at 7-9.

Ultimately, I agree with Trucking and find that James forfeited its right to arbitration by not complying with the procedural requirements of the MPPAA. This action may therefore proceed.

3

## A. Dismissal Pursuant to Fed. R. 12(b)(1) for Lack of Subject Matter Jurisdiction

James's challenge goes to the Court's subject matter jurisdiction over Trucking's claim. Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual challenge, however, attacks subject-matter jurisdiction by challenging the truth (or completeness) of the jurisdictional allegations set forth in the complaint. *Mortensen*, 549 F.2d at 891. Thus a factual jurisdictional proceeding may not occur until the plaintiff's allegations have been controverted. *Id.* at 891 n. 17. In a factual challenge, the Court may consider evidence outside the pleadings. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d. Cir. 2007) (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

James's motion controverts the facts alleged in the Complaint with extrinsic evidence. It is therefore a factual attack on the Court's subject matter jurisdiction, which does not confine the Court to the allegations of the Complaint or require that they be presumed true.

### B. Arbitration Under the MPPA

In the case of a complete or partial withdrawal, Section 1399 of the MPPA requires the sponsor plan "as soon as practicable" to notify the employer of the amount of liability and a schedule for payments, and to demand payment in accordance with that schedule. 29 U.S.C. § 1301(b)(1). If the employer disputes the liability, it may request review by the sponsor of any specific matter related to the determination its liability. 29 U.S.C. § 1399(b)(2). After a "reasonable review," the sponsor plan must notify the employer of its decision, the basis for the decision, and the reason for any change in its determination of liability or the schedule of payments. Notwithstanding a request for review, the employer

must begin making instalment payments no later than 60 days after the date of the sponsor plan's demand. 29 U.S.C. § 1399(c)(2).

If the sponsor plan and the employer continue to dispute the withdrawal liability after the sponsor plan's review, Section 1401 allows one or both parties to initiate an arbitration proceeding to resolve the dispute. Section 1401(a)(1) states: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Either party may unilaterally initiate arbitration proceedings within 60 days of the earlier of (A) the date of notification to the employer under Section 1399(b)(2)(B), or (B) 120 days after the date of the employer's request under Section 1399(b)(2)(A). 28 U.S.C. § 1401(a)(1). The parties may also jointly initiate arbitration within 180 days from the date of the plan sponsor's demand under Section 1399(b)(1). *Id.* While the dispute is pending, the payments determined by the sponsor plan must be paid by the employer. 29 U.S.C. § 1401(d); *Bd. of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 507-08 (3d Cir. 1992).

The MPPAA's procedural scheme requires that, for federal court jurisdiction to attach, the parties must first exhaust the arbitration remedy. *Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.*, 830 F.2d 1241, 1248-49 (3d Cir. 1987); *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 886 (2d Cir. 1988). The Court's jurisdiction under the MPPAA can thus arise in one of two ways: (1) no arbitration is initiated, or (2) arbitration proceedings are complete. 29 U.S.C. § 1401(b). If no arbitration was initiated, the plan sponsor may bring an action in a State or Federal court to collect the amounts demanded under Section 1399(b)(1). 29 U.S.C. § 1401(b)(1). If arbitration was initiated and is now complete, any party may bring an action in an appropriate United States District Court in accordance with Section 1451 to enforce, vacate, or modify the arbitrator's award. 29 U.S.C. § 1401(b)(2).

If I find that James properly complied with its obligations under the MPPAA and validly initiated arbitration, it follows that this Court lacks jurisdiction until arbitration is completed. 29 U.S.C. § 1401(b). James and Trucking agree on that general principle, but disagree as to whether James forfeited its right to arbitrate. The MPPAA does not require every employer who receives notification of withdrawal liability to make a request for review. *See* 29 U.S.C. §§ 1399(b)(2)(A) (stating that employer "may" ask a plan sponsor to review determination of employer's liability). An employer that disputes its

5

liability, however, must comply with the procedures set out in Section 1401. *See Bd. of Trustees of Trucking Employees of North Jersey Welfare Func, Inc. Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 294 n. 5 (3d Cir. 2004). To unilaterally request arbitration (as opposed to a joint request, *see supra*), the employer must first request review from the sponsor plan; if unsatisfied, it may then file a timely request for arbitration. The request for arbitration by the employer must be initiated within the *earlier* of (1) 60 days from the date of the sponsor plan's responsive notification, or (2) 120 days from the date of the employer's request of review. 29 U.S.C. § 1401(a)(1).

Here, James failed to make any request for review by the sponsor plan. Trucking informed James, the employer, of its withdrawal liability in a letter dated March 14, 2012. Compl. ¶ 10; Def. Ex. 3 (Docket No. 12-2). James did not request a review of Trucking's determination, but instead immediately sent a letter request for arbitration to the New Jersey State Board of Mediation. Def. Ex. 4 (Docket No. 12-2). That letter, dated April 5, 2012, demanded arbitration to challenge the "manner in which the Local 560 Benefit Funds have calculated the Withdrawal Liability . . . and to challenge the amount thereof." *Id.* A copy of the letter was sent to counsel for Local 560. Thus, although James requested arbitration, he did not comply with the procedure set forth in Sections 1399 and 1401(a).[2]

In short, James jumped the gun. The process set forth in the MPPAA promotes early resolution of disputes by giving the sponsor plan the opportunity to re-examine its determination. By skipping over the request for review, James deprived the sponsor plan of that opportunity. *See Einhorn v. J & S*, 577 F. Supp. 752, 761 (D.N.J. 2008). That failure to follow MPPAA procedure precluded James from unilaterally initiating arbitration. *See e.g. IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 129-30 (3d Cir. 1986); *ILGWU Nat'l Retirement Fund*, 846 F.2d at 887. *See also Amalgamated Lithographers of America v. Unz & Co. Inc.*, 670 F. Supp. 214,

---

[2]     James argues that the 60 day period runs from the date of Trucking's original notification letter (March 14, 2012). Def. Br. at 2, 7, 9. That is not correct. As discussed above, the 60 day period runs from the date of the sponsor plan's notification in response to the employer's request for review. 29 U.S.C. § 1401(a)(1)(A). James never made a request for review, so the 60 day period does not apply.

226-26 (S.D.N.Y. 2009); *PACE Industry Union-Management Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 459 (M.D. Tenn. 2011).[3]

In response, James asserts what amounts to a counter-waiver. Trucking, says James, failed to object to arbitration and thereby waived the objection it is raising here. In James's view, the arbitration was, in effect, "jointly" initiated in accordance with 29 U.S.C. § 1401(a). Def. Reply Br. (Docket No. 15) at 6-7. That "joint application" characterization is significant for the following reason: A jointly initiated arbitration is not subject to the request-for-review precondition, and it may be brought at any time within 180 days of the sponsor plan's original demand (here, March 14, 2012). 29 U.S.C. § 1401(a). Accordingly, if James and Trucking had initiated the arbitration together, James's failure to request review would not have doomed its effort to arbitrate the dispute.

James's evidence of a joint application, however, is lacking. True, the parties' submissions contain no indication that Trucking actively *objected* to James's request for arbitration before this lawsuit was filed. Def. Reply Br. at 6-7. That evidence, however, falls far short of a demonstration that the arbitration was initiated jointly. There is no evidence before the Court that Trucking participated in arbitration proceedings at all. Indeed, on May 23, 2012, *after* James requested arbitration, Trucking notified James that it was in default. Def. Ex. 5 (Docket No 12-2). Then, on August 17, 2012, Trucking sent James a letter stating that James's request for arbitration failed to identify the disputed issues, and that Trucking reserved the right to initiate a lawsuit to collect either the delinquent payments or the full sum. Def. Ex. 6 (Docket No. 12-2). The New Jersey Mediation Board scheduled a hearing, but the hearing never took place. According to James, it was canceled to permit settlement discussions. *See* Def. Exs 8-10. Settlement talks then failed, and Trucking filed this action. Regardless of James's reasons for agreeing to postpone or cancel

---

[3]     Even if I treated the request for arbitration as a request for review, I would still be constrained to find that James forfeited its statutory rights. At that time, James had failed to make any interim payments as required by Section 1399; James did not make any payments until much later, pursuant to a stipulation entered in this case. *See* Docket No. 11. Then, James correctly and properly agreed to, and did, retroactively pay the long-overdue instalments. At the time it sought arbitration, however, it was in default; so even if this had been a request for review, Trucking might not have been obligated to respond. *See generally IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 130 (3d Cir. 1986) (holding that employer that failed to request review and subsequently request arbitration forfeited statutory rights and defaulted under 29 U.S.C. § 1399).

the hearing, the fact remains that there is no evidence suggesting that Trucking participated in initiating the arbitration.

Because James failed to fulfill the prerequisites for initiating arbitration proceedings pursuant to Section 1401,[4] and in the alternative defaulted on its obligations to make interim payments pursuant to Section 1399,[5] it forfeited its right to arbitrate this dispute. 29 U.S.C. §§ 1399(c)(2), 1401(a); *Barker & Williamson*, 788 F.2d at 130; *Amalgamated Lithographers*, 670 F. Supp. 2d at 226. Therefore, Trucking, as the sponsor plan, properly commenced this civil action pursuant to Section 1401(b)(1), and jurisdiction is proper in this Court.

### III.   CONCLUSION

Accordingly, the motion to dismiss the complaint for lack of subject matter jurisdiction is **DENIED**. The Plaintiff's cross-motion to strike the motion to dismiss is **DENIED AS MOOT**. The parties are directed to contact the Magistrate Judge to set up a conference so that whatever discovery is required may be taken and the matter poised for summary judgment or trial.

An appropriate Order will be entered.

Dated:  August 5, 2014

                                        **Hon. Kevin McNulty**
                                        **United States District Judge**

---

[4]      Other courts have similarly found that where a defendant fails to initiate arbitration, it "waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability," and the withdrawal liability assessed against the defendant becomes fixed. *See e.g. Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, 2008 WL 4426875, at *7 (E.D.N.Y. Sept. 4, 2008); *Bd. of Trustees of Leather Goods, Plastics, Handbags & Novelty Workers Union, Local 1 Joint Ret. Fund v. Stein Fish Co., Inc.*, 2012 WL 2122174, at *3 (E.D.N.Y. Apr. 12, 2012), *report and recommendation adopted sub nom. Bd. of Trustees of the Leather Goods Plastics Handbags & Novelty Workers Union, Local 1 Joint Ret. Fund v. Stein Fish Co., Inc.*, 2012 WL 2120928 (E.D.N.Y. June 12, 2012); *Amalgamated Lithographers*, 670 F.Supp.2d at 226.

[5]      Although the motion to dismiss does not require the Court to make a finding of default, in this case, James's default is related to its forfeit of the statutory right to arbitration.